UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GAP PROPERTIES, LLC; GAP PROPERTIES MANAGEMENT, LLC; 5218 ATLANTIC AVENUE ASSOCIATES, LLC; ENGLISH CREEK CORPORATE CENTER, LLC; FALCON CENTER COMPLEX, LLC,**<br><br>    Plaintiffs,<br><br>    v.<br><br>**JOHN PIERRE CAIRO; AZUR MANAGEMENT COMPANY, LLC; and JOHN DOES 1-25,**<br><br>    Defendants. | Civ. No. 19-20117 (KM) (ESK)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Gap Properties, LLC ("Gap") and several related entities own real property. They contracted with John Cairo and his management company, Azur Management Company, LLC, (together, "the Cairo Defendants") to manage those properties. In this action, Gap and some related entities allege that the Cairo Defendants breached their contract, defrauded Gap, and misappropriated money from Gap. The Cairo Defendants have filed a second amended counterclaim and third-party complaint ("2AC") alleging that Gap and other Gap-related entities breached various agreements and obligations. Gap, along with Gap Properties Management, LLC; 5218 Atlantic Avenue Associates, LLC; English Creek Corporate Center, LLC; Falcon Center Complex, LLC; QIOC, LP; 204 Grand Street, LLC; and 106 York Street, LLC (collectively, "Counterclaim Defendants") now move to dismiss the 2AC.

1

I.  **Background**[1]

Anthony and Antoinette Petrocelli were a couple with real estate assets, and they developed a relationship with Cairo to manage those assets. (2AC ¶¶ 1–2.)[2] Cairo first formed Gap Properties, LLC, to manage the Petrocellis' real estate, and Cairo and Azur managed Gap while receiving some of its profits. (*Id.* ¶¶ 28–34.) Cairo and Azur also created separate limited liability companies or limited partnerships to hold specific properties (the "special purpose entities"), which were in turn managed by Gap and owned by the Petrocelli family trust. (*Id.* ¶¶ 4, 26, 33, 41.)

Azur and Gap had multiple agreements with each other over the years. This case primarily concerns the Management Agreement, into which Azur and Gap entered in February 2013, after Anthony Petrocelli's death. (*Id.* ¶¶ 29–40.) Under the Management Agreement, Azur would manage Gap properties and fulfill Gap's management responsibilities for the special purpose entities. (*Id.* ¶ 41.) In return, Gap agreed to pay Azur (1) $ 153,000 annually, (2) premiums on a life insurance policy, and (3) 30% of the net proceeds from sales of Gap properties. (*Id.* ¶¶ 42–44.) Gap also entered into agreements with the special

---

[1] For ease of reference, certain key items from the record will be abbreviated as follows:

| | | |
|---|---|---|
| "DE_" | = | Docket Entry in this Case |
| "2AC" | = | The Cairo Defendants' Second Amended Answer, Counterclaim, and Third-Party Complaint (DE 54) |
| "Pl. Brf." | = | Memorandum of Law in Support of Plaintiffs' Motion to Dismiss (DE 106) |
| "Def. Brf." | = | The Cairo Defendants' Memorandum of Law in Opposition (DE 109) |
| "Pl. Reply" | = | Reply in Support of Plaintiffs' Motion to Dismiss (DE 110) |
| "Op." | = | The Court's November 17, 2020 Opinion (DE 40) |

[2] For purposes of a motion to dismiss, all well-pleaded facts stated in the 2AC are assumed to be true. *See* Section II, *infra.*

purpose entities, in which they essentially agreed to reimburse Gap for the management service fees which Gap would owe Azur under the Management Agreement (the "special funding agreements"). (*Id.* ¶ 45.)

The Management Agreement provided that Azur was entitled to the agreed compensation through September 2017. (*Id.*, Ex. D, ¶1.) Nonetheless, through 2017 and 2018, the Cairo Defendants continued to provide management services to Gap and worked to sell Gap properties for a profit, at Antoinette Petrocelli's direction. (*Id.* ¶¶ 53–55.) Accordingly, the Cairo Defendants allege that the Agreement's term was "extended by the agreement and/or conduct of the parties." (*Id.* ¶ 52.)

In mid-2018, Antoinette Petrocelli died, and Neil Petrocelli (who is Antoinette and Anthony's nephew) replaced her as co-trustee. (*Id.* ¶ 52.) Gap then informed Azur that it was ending any agreement for Azur to provide management services to Gap and the special purpose entities. (*Id.* ¶ 58.) The Cairo Defendants now allege, *inter alia*, that Gap wrongfully failed to pay them management fees and Azur's portion of the profits from sales of Gap properties. (*Id.* ¶¶ 53, 62.)

### A. Procedural History

In November 2019, Gap, a related management entity (Gap Properties Management, LLC), and three of the special purpose entities sued the Cairo Defendants. (DE 1 ¶¶ 24–44.) The Cairo Defendants answered the complaint and filed a counterclaim and third-party complaint, adding four other special purpose entities as third-party defendants. (DE 10.) The Cairo Defendants amended that pleading in April 2020. (DE 24.) The amended counterclaim was dismissed in part on September 17, 2020. (DE 40, 41.) The Cairo Defendants filed the 2AC on November 25, 2020. (DE 54.) Plaintiffs now move to dismiss the 2AC. (DE 106.)[3]

---

[3] On October 1, 2021, Cairo and Azur filed a motion for leave to file amended counterclaims and third-party complaint. (DE 122.) They seek to add certain parties and claims. That motion does not appear to impact the Plaintiffs' motion to dismiss and is not addressed herein.

## II. Standard of Review

A motion to dismiss a counterclaim or third-party claim is analyzed under the same standards as an ordinary Rule 12(b)(6) motion to dismiss a complaint. *Bank of Hope v. Chon*, Civ. No. 14-1770, 2017 WL 39554, at *2 (D.N.J. Jan. 4, 2017) (collecting cases); *see generally* Fed. R. Civ. P. 12(b)(6) (providing for dismissal for failure to state a "claim").

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations. Nevertheless, "a [party's] obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the factual allegations must be sufficient to raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a counterclaim or third-party claim if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the pleading are accepted as true and all reasonable inferences are drawn in favor of the Azur and Cairo. *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

### III. Discussion

Plaintiffs move to dismiss six of the Cairo Defendants' claims in the 2AC. I address them in turn.

#### a. 18 U.S.C. § 1030 Claim (Count Eight)

The 2AC asserts for the first time a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. "In broad strokes, the CFAA prohibits an individual from intentionally or knowingly accessing a protected computer, without authorization, to cause damage or commit fraud." *Buchanan v. Ingram Content Grp.*, No. 20-CV-2421, 2021 WL 4199324, at *2 (D.N.J. Sept. 14, 2021). Plaintiffs argue that this CFAA claim should be dismissed because it (1) fails to plead that the Computers are "protected computers"; (2) fails to sufficiently plead damages; and (3) was filed beyond the statute of limitations. (Pl. Brf. at 8.)

Count Eight alleges that Gap and the Special Purpose Entities are in possession of and have accessed a Vostro computer tower and Dell Laptop ("the Computers") belonging to the Cairo Defendants. (2AC ¶¶ 147, 151.) The 2AC alleges that Gap and the Special Purpose Entities accessed the files, data, and information on the Computers without the Cairo Defendants' knowledge or consent. (2AC ¶ 152.)

First, the CFAA applies only to "protected computers." The CFAA defines a protected computer as an "electronic . . . or other high speed data processing device which is used in or affecting interstate or foreign commerce or communication[.]" *Grisafi v. Sony Elecs. Inc.*, Civil Action No. 18-8494 (JMV) (JBC), 2019 WL 1930756, at *7 (D.N.J. Apr. 30, 2019) (citing 18 U.S.C. §§ 1030(e)(1), (e)(2)(B)). The Cairo Defendants have alleged that the Computers "maintained an internet connection and were engaged in interstate commerce." (2AC ¶ 159.). That allegation that the Computers maintained an internet connection and are in interstate commerce is sufficient to plausibly plead that the Computers are "protected computers" within the meaning of the CFAA. *See Grisafi v. Sony Elecs. Inc.*, Civil Action No. 18-8494 (JMV) (JBC), 2019 WL

5

1930756, at *7 (D.N.J. Apr. 30, 2019) (finding that a computer connected to, and used to access, the Internet is a "protected computer" under the CFAA) (*United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) (finding the same); *United States v. Roque*, No. 12-540, 2013 WL 2474686, at *2 (D.N.J. June 6, 2013) (finding the same)). Plaintiffs note that the computers are only alleged to have "maintained an internet connection," not to have actually accessed the internet. I find the latter to be a reasonable inference from the former. Moreover, the Cairo Defendants were engaged in the business of managing multiple properties. The Counterclaim Defendants are properties and businesses located in different states, including at least New Jersey and Pennsylvania. (2AC ¶¶ 18-25.) It is reasonable to infer the Computers were used to manage those properties and were therefore used in or affecting interstate commerce.

Second, the CFAA specifies that a civil action can only be brought if the conduct involves one of five factors. 18 U.S.C. § 1030(g). The Cairo Defendants argue that this requirement is satisfied because they suffered a loss during any 1-year period aggregating at least $5,000 in value. 18 U.S.C. §§ 1030(g); 1030(c)(4)(1)(i)(I)[4]. "Loss" is defined under the CFAA as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). "Numerous district court decisions in the Third Circuit have held that to fall within this definition of 'loss,' the 'alleged loss must be related to the impairment or damage to a computer or computer system.'" *Volpe v. Abacus Software Sys. Corp.*, No. CV 20-10108, 2021 WL 2451968, at *6 (D.N.J. June 16, 2021) (quoting *Sealord Holdings, Inc. v. Radler*, No. CIV.A. 11-6125, 2012 WL 707075, at *4 (E.D. Pa. Mar. 6, 2012) (collecting cases)). "[A]

---

[4]   This argument, however, is made only in the Cairo Defendants' briefing, and is not alleged in the Complaint.

compensable loss under the CFAA is generally either 'the cost of remedial measures taken to investigate or repair the damage to the computer, or . . . the amount of lost revenue resulting from a plaintiff's inability to utilize the computer while it was inoperable because of a defendant's misfeasance.'" *Id.* (citing *Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, No. CIV.A. 09-2751, 2011 WL 6088611, at *5 (E.D. Pa. Dec. 7, 2011)).

The 2AC alleges only that "Based on Gap and the Special Purpose Entities' improper access of Counterclaimants' Electronic Documents, Data and Emails on Counterclaimants' Computer Systems, Counterclaimants have sustained damages in excess of the jurisdictional amount of the CFAA." (2AC ¶ 166.) The Counterclaim contains no factual allegation of a specific amount or explanation as to how it was calculated. Such bare allegations that a legal requirement was met are clearly conclusory. *See Advanced Fluid Sys. v. Huber*, 28 F. Supp. 3d 306, 331 (M.D. Pa. 2014) ("[Claimant's] conclusory allegations, reflecting only a formulaic recitation of the statutory loss element, are insufficient to satisfy federal pleading requirements.").

For this reason, the Cairo Defendants' CFAA claim is dismissed. Because the deficit is one of pleading, and the briefs appear to suggest that amendment might not be futile, this dismissal is without prejudice to amendment within 30 days.[5]

b.   **Conversion (Count Nine)**

The Cairo Defendants allege a claim for conversion of their personal property, including the Computers, a desk and chair, a TV and stand, and certain files and records. (2AC ¶ 168.) The Cairo Defendants allege that Gap

---

[5] Plaintiffs also argue that the claim is brought beyond the limitation period. The CFAA has a two-year limitation period, starting from either the date of the act or the date of the discovery of the damage. 18 U.S.C. § 1030(g). If a plaintiff does not allege "damage," as defined by § 1030(e)(8), then the plaintiff is limited to bringing the action within two years of the date of the act complained of. *Radcliff v. Radcliff*, No. CV 20-3669, 2020 WL 7090687, at *5 (D.N.J. Dec. 4, 2020). Clarity in the counterclaims as to what damage and/or loss the Cairo Defendants are alleging will therefore aid in a limitation period analysis.

and the Special Purpose Entities are in possession of these items and have refused to return them to the Cairo Defendants. (2AC ¶ 170.)

"[C]onversion is the intentional exercise of dominion and control over chattel that seriously interferes with the right of another to control that chattel." *Meisels v. Fox Rothschild LLP*, 222 A.3d 649, 661 (N.J. 2020). The elements of conversion are: "(1) the property and right to immediate possession thereof belong to the plaintiff and (2) the wrongful act of interference with that right by the defendant." *Latef v. Cicenia*, No. A-5747-13T2, 2015 WL 10458543, at *5 (N.J. App. Div. Mar. 14, 2016) (internal quotation marks omitted).

Plaintiffs argue that the Cairo Defendants have failed to plead facts that they are the owners of personal property, that they possess title, or have the right to immediate possession. The Cairo Defendants have pleaded that they "are the owners of the personal property" and that they have the right to immediate possession. (2AC ¶¶ 168, 169.) They have identified the items with specificity. (2AC ¶ 168.) I find these allegations sufficient to survive a motion to dismiss. I will not dismiss this claim for because it lacks particular "magic words," especially where, as here, Plaintiffs make no suggestion that Defendants do not own the property, or that the claim should fail in any substantive way.

### c.   Breach of Covenant of Good Faith and Fair Dealing (Count Three)

In the September 17, 2020 opinion ("Prior Opinion"), I dismissed the Cairo Defendants' claim for breach of the implied covenant of good faith and fair dealing, because it was identical to the claims for breach of the express terms of the Management Agreement. (Op. at 5-6.) The Cairo Defendants have amended this claim to add factual allegations, which Plaintiffs argue are insufficient to correct the defect identified in the Prior Opinion. (Pl. Brf. at 15.) The 2AC details the "strong bond" Cairo and Azur had with the Petrocellis (2AC ¶ 89), and describes Neil Petrocelli as having "wrongfully terminated" Azur's property management agreement (2AC ¶ 96). The 2AC further alleges that Gap concocted false allegations of misconduct against Cairo and Azur as a pretext

8

to terminate the Management Agreement. (2AC ¶ 99.) The pleading then clarifies that the claim for breach of the covenant of good faith against Gap is "secondary and only asserted as an alternative theory to the extent a determination is made that the Special Purposes Entities are not liable as principals under the Management Agreement." (2AC ¶ 106.)

"Every contract contains an implied covenant of good faith and fair dealing." *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002). But a breach of the implied covenant claim is different from a straight breach of contract claim. *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, 329 F. Supp. 3d 56, 75 n.10 (D.N.J. 2018). "In a more straightforward case, the breach of the implied covenant arises when the other party has acted consistent with the contract's literal terms, but has done so in such a manner so as to 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'" *Wade*, 798 A.2d at 1262 (quoting *Bak-A-Lam Corp. of Am. v. Alcoa Bldg. Prods., Inc.*, 351 A.2d 349, 352 (N.J. 1976)) (alteration in original). In other words, in an implied-covenant case, a party has not violated a literal term of the agreement—which would give rise to a breach of contract claim—but has violated the spirit and purpose of the agreement. *See id.* As in the case of quasi-contract, a plaintiff cannot prevail on both theories; when a party breaches an explicit term of a contract, a plaintiff can only bring a breach of contract claim, as the defendant cannot also "be found separately liable for breaching the implied covenant of good faith and fair dealing when the two asserted breaches basically rest on the same conduct." *Id.* at 1261.

The Cairo Defendants first argue that the claim is not merely duplicative of the breach of contract claim because the allegations "clarify the intent underlying the termination" of the Management Agreement. (Def Brf. at 24.) On the one hand, the alleged breach—termination—is recoverable under a claim for breach of contract. "Wrongful termination" is another way for the Cairo Defendants to allege that Plaintiffs did not fulfill their obligations under the contract, i.e., that they failed to (1) pay 30% of the net proceeds from the York

9

sale, (2) pay management fees, (3) pay 30% of the net proceeds from the sale of other properties, and (4) indemnify and defend on the Penn Cleaning lawsuit. The two asserted claims may appear to "basically rest on the same conduct," making them duplicative. *Wade*, 798 A.2d at 1261. However, the Cairo Defendants' claim that Gap created reasons as a pretext for termination is more similar to a standard breach of the implied covenant of good faith and fair dealings claim. If what they are alleging is that even if Gap literally fulfilled the terms of the contract, it did so in bad faith by inventing reasons to terminate, the claim stands on its own feet. Under that theory, therefore, I will deny the motion to dismiss as to this claim. While double recovery will not be permitted, the two claims are distinct enough to coexist at the pleading stage.[6]

      I note that the Cairo Defendants also argue in the alternative that the claim is asserted as an alternative theory "to the extent the Special Purposes Entities are not liable as principals under the Management Agreement." (Def. Brf. at 24.) As explained in the Prior Opinion, however, the implied covenant does not stand on its own feet, but by definition is an implied term *of an existing contract. See Wade*, 798 A.2d at 1262 (citation omitted); *see also Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 532 (D.N.J. 2017). The Cairo Defendants cannot state a claim for breach of the implied covenant of good faith and fair dealing against the Special Purposes Entities if there is no contract with them. *See Noye v. Hoffmann-La Roche Inc.*, 238 N.J. Super. 430, 434, 570 A.2d 12, 14 (App. Div. 1990) ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."); *Kamdem-Ouaffo v. Task Mgmt.*, No. 1:17-cv-7506, 2018 WL 3360762, at *50 (D.N.J. July 9, 2018) (dismissing breach of implied covenant of good faith and fair dealing

---

[6]    Plaintiffs argue briefly that Defendants fail to plead the second element of the claim, which requires allegations that Cairo and Azur "performed under the terms of the contract unless excused." (Pl. Reply at 13.) However, I will not dismiss on that basis, that fact can be inferred from the Complaint and whether Cairo defendants performed under the contract remains a central issue to this litigation and requires factual development.

claim asserted against a nonparty to the contract). While I do not dismiss the count, I do disallow this alternative theory.

### d.  Third-Party Beneficiary Claim (Count Four)

The Cairo Defendants allege that Gap entered into a series of agreements with the Special Purpose Entities in which Gap agreed to manage the properties and the Special Purpose Entities agreed to fund the costs for the management service provided. (2AC ¶ 111.) The Cairo Defendants allege that at the time of the agreements, Gap and the Special Purpose Entities knew that Gap's duty to manage the properties would be contracted out to Azur. (2AC ¶ 113.) In this way, the Cairo Defendants allege that Azur was an intended third-party beneficiary of the Management Funding Agreement and Principal Agreements. (2AC ¶ 121.) Plaintiffs argue that the Cairo Defendants fail to state a third-party beneficiary claim.

As explained in the Prior Opinion, to determine whether Azur can state a third-party beneficiary claim, I must determine whether Gap and the special purpose entities "intended [Azur] to benefit from the existence of the [special funding agreements]." *Ross v. Lowitz*, 120 A.3d 178, 189–90 (N.J. 2015) (quoting *Broadway Maint. Corp. v. Rutgers, State Univ.*, 447 A.2d 906, 909 (N.J. 1982)). "The contractual intent to recognize a right to performance in the third person is the key." *Broadway*, 447 A.2d at 909; *see also Dravo Corp. v. Robert B. Kerris, Inc.*, 655 F.2d 503, 510 (3d Cir. 1981) ("New Jersey courts have been hesitant to imply a third-party beneficiary obligation without an explicit indication by the parties that . . . [the third party] will have a direct claim under the contract."). Courts glean that intent "from an examination of the contract and a consideration of the circumstances." *Rieder Cmtys., Inc. v. Township of N. Brunswick*, 546 A.2d 563, 597 (N.J. Super. Ct. App. Div. 1988).

In the Prior Opinion, I found that the allegations established at best that Azur was an incidental beneficiary. The Special Purpose Entities agreed to pay Gap for "management service fees," and some or all of those fees would cover the fees Gap owed to Azur. It was not clear that the special funding agreements

11

were "made for the benefit of" Azur. Instead, the purpose of the agreements as alleged was to obligate the entities to pay fees to Gap generally.

In the 2AC, the Cairo Defendants now explain that the Management Agreement, which was a contract between Gap and Azur, explicitly referenced the Special Purpose Entities. (2AC ¶ 111.) Further, the 2AC alleges that "the Management Funding Agreements/Principal Agreements specifically provided that the applicable Special Purpose Entity was responsible for all obligations incurred by Gap by reason of Gap's entry into any contract with any third-party to further the management of the Properties. See Exhibit E at ¶ 3, 8, 10, 11(F)." (2AC ¶ 116.) The agreement at Exhibit E is an unexecuted contract between the owner of Falcon Center Complex, LLC (inferably, one of the Special Purpose Entities) and the Manager of Gap. (2AC, Ex. E at 9.) Paragraph 10 of the agreement states "Upon termination of or withdrawal from this Agreement by either party, Owner shall assume the obligations of any contract or outstanding bill executed by Manager under this Agreement for and on behalf of owner and responsibility for payment of all unpaid bills." (Id. at ¶ 10.) While it is not clear that any such termination or withdrawal did occur, or whether Gap entered into any agreements with the Cairo Defendants "for and on behalf of owner," this may suggest that the parties did intend Azur to be a third-party beneficiary. The 2AC also alleges that Gap and the Special Purpose Entities "knew and were aware that GAP's duty to manage the Properties would be contracted out to Azur as had been the course of conduct over the course of many years." (2AC ¶ 113.) This too may suggest that Azur was a third-party beneficiary of the agreements with the Special Purpose Entities.

Plaintiffs do not substantively address these new allegations in their brief. At times, "the provisions of a contract and extrinsic circumstances imply an intent to create enforceable third-party rights, even if that intent is not made explicit." *Pension Ben. Guar. Corp. v. United Tool & Stamping Co. of N.C., Inc.*, No. 2:17-cv-3972, 2017 WL 6001490, at *6 (D.N.J. Dec. 4, 2017) (citing *Consult Urban Renewal Dev. Corp. v. T.R. Arnold & Assoc., Inc.*, 2009 WL 1969083, *2 (D.N.J. July 1, 2009) ("To determine the parties' intent, the Court

12

must look to both the language of the contract and to the surrounding circumstances."). It may be that Gap and the Special Purpose Entities did no more than "act against a backdrop of knowledge" that the Cairo Defendants would benefit from the agreement. *J.V. v. Macy's, Inc.*, No. 13-5957 (KSH) (CLW), 2014 WL 4896423, at *8 (D.N.J. Sep. 30, 2014) (citing *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 912 (7th Cir. 1989)). However, I find that further factual development is warranted. *See 760 N.B. Urban Renewal Ltd. Liab. v. Navigators Specialty Ins. Co.*, Civil Action No. 20-5877 (FLW), 2021 WL 287876, at *15 (D.N.J. Jan. 28, 2021) (denying motion to dismiss, despite no express provision signaling intent to create a third-party beneficiary, because circumstances surrounding the agreement were probative); J.*V. ex rel. Valdez v. Macy's, Inc.*, No. 13-5957 KSH CLW, 2014 WL 4896423, at *3 (D.N.J. Sept. 30, 2014) (denying motion to dismiss related to a plaintiff's breach of contract claim premised on third-party beneficiary liability because the record was undeveloped); *see also Atlas Communs. Tech., Inc. v. DXC Tech. Servs., LLC*, No. 3:19-cv-19033-BRM-DEA, 2017 WL 6001490, at *9 (D.N.J. Aug. 31, 2020) ("Generally, questions of contract interpretation should not be decided without the benefit of discovery and a full evidentiary record.").

At this stage, it is sufficiently alleged that the Cairo Defendants were intended beneficiaries. That may or may not turn out factually to be the case. I will, however, deny the motion to dismiss as to this claim.

  **e.**  **Counts One and Two**

Plaintiffs argue that counts one and two constitute "new or reframed claims" and should be dismissed as being outside the scope of the Court's September 17, 2020 Order. That Order dismissed certain claims without prejudice: "Those dismissals are entered without prejudice to the filing, within 30 days, of a motion to further amend the second amended counterclaim or the third-party complaint." (DE 41 at 2.) The language of the Order did not

preclude the Cairo Defendants from amending their pleading to add new claims, and Plaintiffs' arguments to the contrary are rejected.[7]

Further, on October 19, 2020, the Cairo Defendants filed a motion for leave to amend their second amended answer, counterclaim, and third-party complaint. (DE 44.) The parties then entered into a joint stipulation granting Defendants' motion. (DE 52.) The stipulation specifically referenced the proposed pleading attached to Defendants' motion, which included the breach of contract claim against the Special Purpose Entities that Plaintiffs now object to. (DE 44-1, Ex. B ¶¶ 66-87.) Given those circumstances, Plaintiffs' objection in their motion to dismiss is especially ill-taken, and I will not dismiss these claims on that basis.

### IV.    Conclusion

For the reasons set forth above, the motion (DE 106) to dismiss the Second Amended Counterclaim and Third-Party Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part. The CFAA claim (Count Eight) is dismissed without prejudice. The motion is denied as to counts one, two, three, four, and nine.

An appropriate order follows.

Dated: December 3, 2021

/s/ Kevin McNulty

_____
Kevin McNulty
United States District Judge

---

[7] Plaintiffs also make this argument as to Counts Eight and Nine (Pl Brf. at 8), and I reject it as to those counts as well.