UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GAP PROPERTIES, LLC; GAP PROPERTIES MANAGEMENT, LLC; 5218 ATLANTIC AVENUE ASSOCIATES, LLC; ENGLISH CREEK CORPORATE CENTER, LLC; FALCON CENTER COMPLEX, LLC,**<br><br>    Plaintiffs,<br><br>    v.<br><br>**JOHN PIERRE CAIRO; AZUR MANAGEMENT COMPANY, LLC; and JOHN DOES 1-25,**<br><br>    Defendants. | Civ. No. 19-20117 (KM) (ESK)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Gap Properties, LLC ("Gap") and several related entities own real property. They contracted with John Cairo and his management company, Azur Management Company, LLC (collectively, "the Cairo Defendants"), to manage those properties. In this action, Gap and some related entities allege that the Cairo Defendants breached their contract, defrauded Gap, and misappropriated money from Gap. The Cairo Defendants have filed a third amended counterclaim and third-party complaint ("3AC"), containing an amended claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, the previous iteration of which I dismissed without prejudice. Gap now moves to dismiss the 3AC as to the amended CFAA claim. Joining in that motion are Gap Properties Management, LLC; 5218 Atlantic Avenue Associates, LLC; English Creek Corporate Center, LLC; Falcon Center Complex, LLC;

QIOC, LP; 204 Grand Street, LLC; and 106 York Street, LLC (collectively, "Counterclaim Defendants").[1]

## I. BACKGROUND[2]

### A. Procedural History

In November 2019, Gap, a related management entity (Gap Properties Management, LLC), and three special purpose entities sued the Cairo Defendants. (DE 1 ¶¶ 24–44.) The Cairo Defendants answered the complaint and filed a counterclaim and third-party complaint, adding four other special purpose entities as third-party defendants. (DE 10.) The Cairo Defendants amended that pleading in April 2020. (DE 24.) The amended counterclaims were dismissed in part on September 17, 2020. (DE 40, 41.) The Cairo Defendants filed their second amended counterclaims and third-party complaint ("2AC") on November 25, 2020. (DE 54.) On December 3, 2021, the CFAA claim contained in the 2AC was dismissed without prejudice. (DE 106.)

---

[1] In conjunction with their opposition to the Counterclaim Defendants' motion to dismiss, the Cairo Defendants filed a cross motion to further amend their counterclaims and third-party complaint. (DE 183.) The Counterclaim Defendants oppose this motion. (DE 185.)

[2] Certain citations to the record are abbreviated as follows:

"DE" = Docket entry number in this case

"3AC" = Third Amended Counterclaim and Third Party Complaint (DE 166)

"Mot." = Plaintiffs'/Counterclaim Defendants'/Third-Party Defendants' Memorandum of Law in Support of Motion to Dismiss Third Amended Counterclaim and Amended Third-Party Complaint as to the § 18 U.S.C. § 1030, Computer Fraud and Abuse Act ("CFAA") Claims Pursuant to Fed. R. Civ. P. 12(b)(6) (DE 167-1)

"Opp." = Defendant/Counterclaimant's Opposition to Plaintiff/Counterclaim Defendant and Third-Party Defendants' Motion for Dismissal and Memorandum of Law in Support of Defendant/Counterclaimant's Cross Motion to Amend Counterclaims and Third Party Complaint (DE 183-1)

"P4AC" = Proposed Fourth Amended Counterclaim and Third Party Complaint (DE 183-3)

On April 26, 2022, the Cairo Defendants filed their 3AC, asserting an amended CFAA claim. (DE 166.)

Now before the Court is the motion of the Counterclaim Defendants to dismiss the amended CFAA claim contained within the 3AC. (DE 167.)

**B. Facts**

Anthony and Antoinette Petrocelli were a couple with real estate assets, held in a family trust. They developed a relationship with Cairo to manage those assets. (2AC ¶¶ 1–2.)[3] Cairo first formed Gap Properties, LLC, to manage the Petrocellis' real estate, and Cairo and Azur managed Gap, in return for a share of its profits. (*Id.* ¶¶ 24–30.) Cairo and Azur also created separate limited liability companies or limited partnerships to hold specific properties (the "special purpose entities"), which were owned by the Petrocelli family trust and managed by Gap. (*Id.* ¶¶ 4, 22, 29, 37.)

Azur and Gap had multiple agreements with each other over the years. This case primarily concerns the Management Agreement into which Azur and Gap entered in February 2013, after Anthony Petrocelli's death. (*Id.* ¶¶ 25–36.) Under the Management Agreement, Azur would manage Gap properties and fulfill Gap's management responsibilities for the special purpose entities. (*Id.* ¶ 37.) In return, Gap agreed to pay Azur (1) $ 153,000 annually, (2) premiums on a life insurance policy, and (3) 30% of the net proceeds from sales of Gap properties. (*Id.* ¶¶ 38-40.) Gap also entered into agreements with the special purpose entities, in which they essentially agreed to reimburse Gap for the management service fees which Gap would owe Azur under the Management Agreement (the "special funding agreements"). (*Id.* ¶ 41.)

The Management Agreement provided that Azur was entitled to the agreed compensation only through September 2017. (*Id.*, Ex. D, ¶1.) Nonetheless, through 2017 and 2018, the Cairo Defendants continued to provide management services to Gap and worked to sell Gap properties for a

---

[3] For purposes of a motion to dismiss, all well-pleaded facts stated in the 3AC are assumed to be true. *See* Section II, *infra.*

3

profit, at Antoinette Petrocelli's direction. (*Id.* ¶¶ 49-51.) Accordingly, the Cairo Defendants allege, the Agreement's term was "extended by the agreement and/or conduct of the parties." (*Id.* ¶ 48.)

In mid-2018, Antoinette Petrocelli died, and Neil Petrocelli (who is Antoinette and Anthony's nephew) replaced her as co-trustee. (*Id.* ¶ 52-53.) Seemingly at Neil's instigation, Gap then informed Azur that it was ending any agreement for Azur to provide management services to Gap and the special purpose entities. (*Id.* ¶ 54.) The Cairo Defendants allege, *inter alia*, that Gap wrongfully failed to pay them management fees and Azur's portion of the profits from sales of Gap properties. (*Id.* ¶¶ 49, 56.)

Most pertinent to this Opinion are the allegations of the 3AC that underlie Count 9, the Cairo Defendants' amended CFAA claim. Allegedly, the Counterclaim Defendants seized, and are currently in possession of, certain computer systems owned by the Cairo Defendants that were used both to carry out their property management duties and to tend to certain personal affairs. (*Id.* ¶¶ 142, 144-146.) The Cairo Defendants allege that the Counterclaim Defendants also "surreptitiously paid an outside consultant to hack and forensically search all aspects of the systems" and "to obtain and/or alter information in the Computer systems that they were not entitled to access and/or alter." (*Id.* ¶¶ 150, 156.) The Cairo Defendants further allege that Gap and the special purpose entities concealed their possession of the computer systems as part of their "fraudulent scheme to deprive [the Cairo Defendants] of approximately $2.5M" and to gain a "tactical advantage in this case." (*Id.* ¶ 148-155.)

## II. STANDARD OF REVIEW

A motion to dismiss a counterclaim or third-party claim is analyzed under the same standards as an ordinary Rule 12(b)(6) motion to dismiss a complaint. *Bank of Hope v. Chon*, Civ. No. 14-1770, 2017 WL 39554, at *2 (D.N.J. Jan. 4, 2017) (collecting cases); *see generally* Fed. R. Civ. P. 12(b)(6) (providing for dismissal for failure to state a "claim").

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations. Nevertheless, "a [party's] obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the factual allegations must be sufficient to raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a counterclaim or third-party claim if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the pleading are accepted as true and all reasonable inferences are drawn in favor of the Azur and Cairo. *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

### III.  DISCUSSION

#### A. Motion to Dismiss

The Cairo Defendants allege that the Counterclaim Defendants violated the CFAA, specifically 18 U.S.C. § 1030(a)(2)(C),[4] a criminal provision which

---

[4]   The Cairo Defendants also assert that their claim falls under a second sub-section of the CFAA, 18 U.S.C. § 1030(a)(2)(B). (3AC ¶ 196.) Because this sub-section

applies to whoever "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." A violation of § 1030(a)(2)(C) also gives rise to civil liability; a person suffering "damage" or "loss" from such a violation is granted a cause of action to sue for money damages or equitable relief. 18 U.S.C. § 1030(g); *Van Buren v. United States*, 141 S. Ct. 1648, 1652 (2021). A civil action for violation of the CFAA may be brought only if one of the five factors in § 1030(c)(4)(A)(i)(I) to (V) is satisfied.[5] Here, the Cairo Defendants assert that their amended CFAA claim satisfies the first, loss-threshold factor: *i.e.,* it involved "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." *Id.* § 1030 (c)(4)(A)(i)(I). (Opp. at 13.)

The critical terms "damage" and "loss" are defined by the statute and limited as to subject matter. CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C.

---

pertains to violations involving information obtained from "any department or agency of the United States" and the 3AC contains no specific allegations regarding information obtained from any federal department or agency, I will only consider the CFAA claim as brought under 18 U.S.C. § 1030(a)(2)(C). I note, however, that even if the Cairo Defendants did assert such allegations, a § 1030(a)(2)(B) claim would be subject to the same analysis.

[5] The factors are:

> (I) loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value;
>
> (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
>
> (III) physical injury to any person;
>
> (IV) a threat to public health or safety; [or]
>
> (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security.

18 U.S.C. § 1030(c)(4)(A)(i)(I) to (V).

§ 1030(e)(8). It defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Like damage, loss "relates to costs caused by harm to computer data, programs, systems, or information services." *Van Buren*, 141 S. Ct. at 1659–60. Moreover, both "damage" and "loss" must be understood to "focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data." *Id.* at 1660.

The Cairo Defendants allege two distinct violations of the CFAA. First, the Cairo Defendants allege that the Counterclaim Defendants caused an "interruption of service" by physically seizing computer systems owned by the Cairo Defendants (3AC ¶¶ 150, 175). Second, they allege that the Counterclaim Defendants "improperly accessed" the computer systems by paying a consultant to hack into them in order to "obtain and/or alter information." (*Id.* ¶¶ 150, 156). The Counterclaim Defendants respond that the amended CFAA claim should be dismissed because it was filed beyond the applicable two-year statute of limitations and because, even assuming the claim is timely, the Cairo Defendants fail to plead "damage" or "loss" as defined by the statute. (Mot. at 10, 12.) Because the statute of limitations may present factual issues, *see* pp. 11–12 n.8, *infra,* I decide the motion on the basis of the second contention, *i.e.,* failure to state a claim.

### 1. Interruption of Service

The Cairo Defendants do not state a claim for relief under their theory that the Cairo Defendants, by seizing the computers, caused damage or loss in the form of an "interruption of service."

The Cairo Defendants allege that the Counterclaim Defendants' seizure and continued possession of the Cairo Defendants' physical computer systems amount to an "interruption of service." This interruption, the Cairo Defendants

allege, was part of the Counterclaim Defendants' "fraudulent scheme" to terminate the parties' Management Agreement and "deprive [the Cairo Defendants] of over $2.5M in compensation." (3AC ¶ 183.) But while the conversion of a physical computer system may be wrongful, or even may be related to some other fraud, it does not implicate the specific concerns of the CFAA.

The gist of the underlying CFAA violation, recall, is that an individual "intentionally *accesses* a computer without authorization or exceeds authorized *access* . . . ." 18 U.S.C. § 1030(a)(2)(C) (*emphasis* added). To be sure, seizing a computer could plausibly result in an "impairment" to the "availability of data . . . or information" to the true owner. *See* 18 U.S.C. § 1030(e)(8). But the CFAA does not displace the usual laws governing theft or conversion where the subject property happens to be a computer. It provides that actionable damage or loss must have resulted from a defendant's having *accessed* the computer. *Id.*; *see also Van Buren, supra.*

Focusing for the moment on this interruption-of-service theory, the Cairo Defendants do not allege that the service interruption resulted from anything the Counterclaim Defendants did while accessing their computer systems. For instance, the Cairo Defendants do not allege that the Counterclaim Defendants deleted data, changed passwords, or made any other system alterations. They allege only that the Counterclaim Defendants physically removed their computer systems from their possession and control. Such conduct may be wrongful, but it is beyond the scope of the CFAA and cannot form the basis of a claim thereunder.

### 2. Improper Access

The Cairo Defendants also assert a theory that the hiring of outside consultants to hack into the computers constituted "improper access." This theory fails to sufficiently allege "damage" or "loss" as defined by the CFAA.

I first consider "damage." The Cairo Defendants allege that the Counterclaim Defendants "surreptitiously paid an outside consultant to hack

and forensically search all aspects of the systems" and "to obtain . . . information in the Computer systems that they were not entitled to access."[6] (*Id.* ¶¶ 150, 156.) Mere unauthorized access, however, does not constitute actionable "damage" under the CFAA. More is required. Courts have found damage, for example, where a defendant has inflicted some type of impairment on the computer, such as corruption of files, *see Van Buren*, 141 S. Ct. at 1660; deletion of data, *see Volpe v. Abacus Software Sys. Corp.*, No. 20-cv-10108, 2021 WL 2451968, at *7 (D.N.J. June 16, 2021); or installation of unauthorized software, *see Radcliff*, 2020 WL 7090687, at *6. Here, however, the Counterclaim Defendants are factually alleged only to have "fraudulently accessed" various "electronic documents, emails and other data" stored on the computer systems, including personal and financial information belonging to the Cairo Defendants. (3AC ¶¶ 160, 177-178.) This amounts to an allegation that the Counterclaim Defendants saw or obtained data they should not have seen or obtained, not that they altered or damaged anything. That, without more, is insufficient to allege "damage" under the CFAA. *See Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*, 810 F.3d 1075, 1084 (7th Cir. 2016) (holding that downloading data without altering data or disrupting service is insufficient to constitute "damage"); *Rodgers Grp., LLC v. Lewis*, No. 22-cv-482, 2022 WL 4095785, at *7 (D.N.J. Sept. 7, 2022).

I next consider "loss." The Cairo Defendants claim that, as a result of the Counterclaim Defendants having accessed their computer systems, they

---

[6] The Cairo Defendants do allege that the Counterclaim Defendants hacked their computer systems to "obtain *and/or alter* information in the Computer systems that they were not entitled to access *and/or alter.*" (3AC ¶¶ 150, 156 (emphasis added)), Such an "and/or" allegation obscures as much as it reveals, and in any event the claim contains no actual facts to suggest that any of the data or information was "altered." All of the Cairo Defendants' related allegations solely involve the Counterclaim Defendants accessing and reviewing information on the computers. To the extent the Cairo Defendants allege that the Counterclaim Defendants *may have altered* information on their computers, I find that allegation both conclusory and speculative. I disregard it for the purpose of my analysis here.

9

suffered the following losses: 1) $2.5 million in lost compensation in connection with the termination of the Management Agreement (3AC ¶ 158); 2) "lost reputation, lost revenue, and other lost business opportunities caused by the false statements made by [the Counterclaim Defendants], utilizing information obtained from the Computer systems" (*Id.* ¶ 185)[7]; and 3) "costs of forensic imaging, analysis, and review of the Computer Systems to determine the full extent of the intrusion, loss of privacy, damage or manipulation to files and materials, etc., in an amount exceeding $5,000 and approximately $75,000 or more" (*Id.* ¶ 185).

Neither of the first two alleged injuries falls under the CFAA's definition of "loss." As noted *supra*, the CFAA focuses on technological harms, *see Van Buren*, 141 S. Ct. at 1660, and defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense. . ." 18 U.S.C. § 1030(e)(11). The lost revenue and reputational damage alleged by the Cairo Defendants are not "reasonable costs" that resulted from the Counterclaim Defendants having accessed their computer systems. The connection, if any, is highly attenuated. Indeed, the Cairo Defendants concede that these costs are more reasonably linked to other causes, *i.e.,* the Counterclaim Defendants' terminating the Management Agreement or making disparaging statements about the Cairo Defendants.

The third loss alleged by the Cairo Defendants— "costs of forensic imaging, analysis, and review of the Computer Systems to determine the full

---

[7] The Cairo Defendants allege that the Counterclaim Defendants made "untrue statements about their character; wrongful allegations of wrongdoing on their part; portraying [the Cairo Defendants] in a false light to business persons who[] had relationships and prior dealings with [the Cairo Defendants]. For example, [the Counterclaim Defendants] made disparaging statements . . . utilizing and mis-representing the hacked information and documents to falsely represent to their lenders that [the Cairo Defendants] had engaged in 'financial mismanagement,' they made false allegations of mismanagement, and otherwise utilized the hacked information for wrongful and improper purposes." (3AC ¶¶ 185-186.)

10

extent of the intrusion" (3AC ¶ 185)—is at least in the ballpark, in the sense of being generically a type of loss covered by the CFAA. It is not, however, sufficiently pleaded under *Twombly/Iqbal* standards of factuality. To begin with, no such forensic efforts are described. And a major stumbling block to any such factual allegation is the conceded fact that the Counterclaim Defendants remain in possession of the computers, which they claim to own. (3AC ¶ 167) Without more, it cannot be plausibly alleged that the Cairo Defendants have incurred "costs of forensic imaging, analysis, and review of the Computer Systems" they do not possess or have access to. Relatedly, the Cairo Defendants have not offered any factual basis for any loss, let alone for pleading that these losses "exceeded $5,000" (the jurisdictional amount) and total "approximately $75,000 or more." (*Id.*)[8]

---

[8]   I gave the Cairo Defendants fair notice of this deficiency in the course of dismissing the previous iteration of the CFAA claim. *Gap Properties, LLC v. Cairo*, No. 19-cv-20117, 2021 WL 5757410, at *4 (D.N.J. Dec. 3, 2021).

Even if the Cairo Defendants did sufficiently allege loss, they would have to surmount a statute of limitations objection, either now or later. The CFAA requires that a civil action be brought "within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). Thus, if a claimant does not allege later-discovered "damage" (a defined term of art), then by default the plaintiff is limited to bringing the action within two years of "the act complained of." *Radcliff v. Radcliff*, No. 20-cv-3669, 2020 WL 7090687, at *5 (D.N.J. Dec. 4, 2020); *Acrison, Inc. v. Rainone*, No. CV221176KMESK, 2022 WL 16695116, at *7 (D.N.J. Nov. 3, 2022); *Sewell v. Bernardin*, 795 F.3d 337, 340 (2d Cir. 2015).

Because the Cairo Defendants do not allege "damage," they are relegated to the requirement that they bring their claim within two years of the date of "the act complained of." 18 U.S.C. § 1030(g). The act complained of is the Counterclaim Defendants' improperly accessing the computer systems. The 3AC does not allege specific dates of the alleged hacking by the consultants, but the surrounding allegations suggest a general time frame. The Cairo Defendants assert that the Counterclaim Defendants searched their data "to find information in order to fabricate a reason to terminate the agreement between the parties" (3AC ¶ 158), suggesting that the alleged hacking began prior to the termination of the Management Agreement on August 22, 2018 (Id. ¶ 54). The two-year statute of limitations would therefore have expired prior to August 22, 2020. The Cairo Defendants first brought their CFAA claim on November 6, 2020, several months after the statute of limitations would have expired.

11

The 3AC does not state a claim for relief under the CFAA. Count Nine of the 3AC must therefore be dismissed.

### B. Motion to Amend

In conjunction with their opposition to the current motion to dismiss, the Cairo Defendants filed a cross motion to further amend the 3AC in order to "incorporate[] prior allegations containing the computation of damages" that appeared in prior briefing. (DE 183.) Their motion will be denied as futile.

Under Fed. R. Civ. P. 15(a)(2), a court should give leave for a plaintiff to amend his pleading "when justice so requires." The Court may deny a motion to amend the pleadings where there is: 1) undue delay, 2) bad faith or dilatory motive, 3) undue prejudice, 4) futility of amendment, or 5) repeated failure to correct deficiencies. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir.2004). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or immediately subject to summary judgment for the defendant." *Am. Corporate Soc'y v. Valley Forge Ins. Co.*, 424 F. App'x 86, 90 (3d Cir.2011) (internal citations omitted). An amended complaint is futile if it could not surmount the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997).

Here, amendment would be futile because the CFAA claim, even as further amended, would still be dismissed for failure to state a claim. The proposed amendment contains four new paragraphs:

- "The illegal seizure and hacking, and interruption of service by GAP by seizing and hacking the two computers caused Cairo and Azur to lose over $12,500 per month in management fees alone, constituting loss

---

Granted, all of this is somewhat speculative, and the Cairo Defendants do allege that the Counterclaim Defendants have continued to access their data throughout the course of the litigation (which may be plausible, given that the Counterclaim Defendants believe themselves to be the rightful owners of the computers). There is no allegation, however, as to the date or circumstances under which the Cairo Defendants investigated or discovered alleged "intrusions." The statute of limitations issues might therefore, as is common, require discovery for their resolution.

12

- and damages of over $150,000, and overall damages in excess of $2M." (P4AC ¶ 184.)

- "Plaintiffs illegally seized Defendants' computers which prevented Defendants from "accessing" or "using" the computers to manage the multi-million dollar interstate real estate portfolio, for the purpose of interrupting and impairing his ability to access the data, systems, and information regarding the multi-million dollar real estate portfolio, as well as Cairo's own business, ventures and assets worth hundreds of thousands of dollars, if not millions. Plaintiff's illegal hack was part of their plan to interfere with Cairo's contracts to manage the multi-million dollar portfolio, to prevent him from exercising his right of first refusal to purchase properties worth millions of dollars, to prevent him from earning hundreds of thousands of dollars in management fees, and to prevent him from obtaining over two million dollars in damages and previously unpaid equity owed to Cairo from prior and future sales of the properties." (P4AC ¶ 185.)

- "John Cairo personally suffered personal violations as a result of the violation of his statutory rights, including but not limited to: violation of his privacy rights and interests, violation of his confidential personal and business information he suffered as a result of the CFAA violations, all of which will vastly exceed the $5,000 damage threshold." (P4AC ¶ 186.)

- "John Cairo demands compensatory and punitive damages well in excess of $5,000 caused by the CFAA violations, including emotional distress, the personal offense he suffered, Plaintiff's wrongful access and examination of all aspects of personal and financial life, his family pictures, his personal assets, his personal business and finances, his bank records, his asset records, all of which constitute an intentional, purposeful, and illegal trampling and violation of his personal rights and interests, damages for which he seeks in hundreds of thousands of dollars, vastly in excess of $5,000."

(P4AC ¶ 187.)

13

These amendments, which the Cairo Defendants themselves characterize as "technical and minor" (Opp. at 4), would not cure the deficiencies outlined above. The only one that appears truly new is the allegation that John Cairo individually suffered "personal violations," such as "violation of his privacy rights" and "violation of his confidential personal and business information." (P4AC ¶ 186-187.) For the reasons stated above, these do not constitute "damage" or "loss" as defined by the CFAA. This proposed further amendment, then, would clearly be futile. The motion to amend will be denied.

## IV.   CONCLUSION

For the reasons set forth above, the Counterclaim Defendants' motion to dismiss the 3AC as to the CFAA claim is **GRANTED**, and the Cairo Defendants' cross motion to amend is **DENIED**.

The dismissal of Count Nine is with prejudice; given the multiple opportunities to amend, it is clear that the Cairo Defendants have exhausted such facts as they possess. Should additional facts emerge in discovery, and should circumstances warrant, the Court will not preemptively rule out an application for further amendment. As things stand, however, the case will go forward without this CFAA claim.

An appropriate order follows.

Dated: November 28, 2022

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**